Thank you. Charles Rabinowitz for Lloyd Rhine. There are two issues in this case. The first is an average weekly wage, but we're switching from 910A to 910C in this one. And the reason this case is up on appeal is not only because Lloyd Rhine received a very deflated average weekly wage from the administrative law judge, but that the administrative law judge violated six very basic, very well-established principles in calculating an average weekly wage under Section 10C. The Benefits Review Board, for reasons I can't explain, affirmed the decision, and that's why we're here. The one of the ---- Roberts, counsel, before you get into that argument, I have a threshold question with respect to FRAP Rule 15a to b. Was the agency named in this appeal? The agency was not named in the appeal, and then I filed a motion to amend, to add the agency, and the Court said it was moot because they already put the agency in there. It was a purely administrative error leaving the agency out. The agency was notified of the appeal, and they were given copies of everything at the same time, and the Court had included the agency in the appeal. It's included in our docket sheet, is what you're saying? The director is considered the agency. Yes. Right. But that has already been cured as far as the records of this Court is concerned? That's been cured. Very well. That's correct. Very well. Thank you. The one of the ---- I would ask the Court to draw its attention to Excerpts of Record, page 497. It's the first page in Volume IV, and this is the PMA calculations for the averages for the various years for A, B, and A and B workers and local aid. And that's what the administrative law judge used for an average weekly wage for Lloyd Rhine. And it's just ---- I can't explain why the judge used this, and I can't ---- nobody urged him to use this, and I can't explain why the Board did it. And one example of how wrong it is, is the Board has said in a 1988 case, McMinnery, I think is the name of it. It's cited on page 25 of the opening brief, that an average weekly wage must include pay guarantee payments. And this exhibit says specifically it excludes pay guarantee benefits. And the Benefits Review Board opinion says in one of the footnotes, on footnote 6 on Excerpts of Record, page 5, that the ALJ's figure included pay guarantee benefits, exactly contrary to what the record said. Vacation ---- that's just one principle why this is wrong. There are five others. Vacation pay is another issue where they just misquoted the record, the judge didn't understand the record, and that's another reason this was so deflated. Well, now, we ---- I'm going to raise the same question that my colleague Judge Smith raises, and that is what's our standard of review here? It's a substantial evidence in the record as a whole, is it not? I argued that for one issue, but it's also a de novo review because these are legal errors. These are not factual errors where the judge factually tried to include it, and the record that he included it. It's a legal error. He left it out. For example ---- Let me ---- you can go ahead. I would like to hear you answer the rest of that question. I know that for example you're going to go, but I guess what you're really saying is that even though we're to give deference here and that this is not something that if it is a legal error that we find, you're suggesting we should de novo look at it and therefore suggest that the decision was not appropriate. That's what you're saying? That's correct. Now, my worry here is this. And again, I'm looking at this Longshoreman's Act. It seems to me that 910C is on its face an approximation of the annual earning capacity of the injured worker, that it wouldn't even apply if I were going to use the That's correct. And therefore, since it's not an exact calculation, it's my understanding that it is to represent a reasonable, it shall reasonably represent the earning capacity. So we're really talking about reasonable here. And if we're talking about reasonability, then again, I'm worried, given what I say is the standard of review, that I would have a tough time on the standard of review that I have to suggest that this is not reasonable. Well, I mean, we might argue about how we do it this way and how we do it that way. But I'm an old trial judge. The jury went into the jury room, and they came back with something I wouldn't have come back with. But if they had substantial evidence to sustain what they did, we granted it, and we went on just like usual. And it seems to me this is the same kind of a situation. But if they violate one of your instructions as a trial judge, it's a reversible error, maybe a reversible error if it's harmful to the case. And that's what we're dealing with here. The judge made legal errors. For one example, vacation pay has to be included in an average weekly wage. That's well established. And this Court held in Sproul, a case that I handled 13 years ago, that vacation pay in the year earned has to be, in the previous year earned, has to be included in the average weekly wage for the longshore worker. What happened in this case is 14 workers came into the union March 1, including Lloyd Ryan. Of the 14, none of them received any vacation pay in 1997. Thirteen of them earned it in 1997. The only one who didn't was Lloyd Ryan because of his injuries. So that 19th said, but they received it in 1998. That was not in the B average for the B workers that the judge used. And the Benefits Review Board said that's fine. I don't know how that can be fine and consistent with Sproul, and that's not a situation where they received lower vacation pay one year and higher ones the next year. They didn't get anything in that year. And so what other specific violations of the law were made in this calculation? I mean, I've read your brief, but, I mean, lay them out, because in my book, whether you include a smaller group of workers or the other group of workers, it's not in the law. Right. Well, of course, for the other 49 workers, we don't know anything whether any of them received vacation pay at all. Well, I understand that. The holiday pay, 6 out of the 14 workers received no holiday pay in 1997, almost half of them. Wage increase. There was a 4 percent wage increase approximately July 1 of 1997. That 1997 average included the first 6 months at the lower rate and the last 6 months at the higher rate. That was never adjusted by the administrative law judge. And the Board said that was okay. Two other things. This has been very well established. You can't consider time off for injuries and sickness and, you know, family emergencies and things like that. Lloyd Ryan, for one, was off 8 out of the 10 months because of injuries after he became a B worker, and his earnings were divided by 52 to get to that average that the judge came up with. Even the employer agreed, urged the judge not to include Lloyd Ryan in the calculation, and the employer's calculation that they urged the administrative law judge was $85 a week higher than the judge actually gave. The last one, and they included other people who were off for extended periods of time for injury and illness in the group of 14, and undoubtedly there were others in that The last thing is that this Court has held and the Benefits Review Board has held and other courts have held that if when a person increases their wage earning capacity, for example, by going from a casual or extra worker to a B worker, that's a significant increase in wage earning capacity. And when you calculate it, in the 52 weeks, you take out, you don't count the period when they were working in the lower capacity. You start the calculation from the day they became a B worker. And this Court had an opinion in Palacios in 1980 and the Bonner case in 1979 where it emphasized that principle. However, the 1997 B average included earnings as casuals as well as B workers for 2 months for 14 of them, and for the other 49, we don't know how many, how much of their time was as a casual worker. All we know is that it included B workers as of December 31 who worked at least one hour as a B worker that year. What do we do about this? Excuse me? What do we do? You reverse, send it back to the administrative law judge for another decision for a decision consistent with the law. Based on what principle? Based on all of these principles that he violated. Remember my question to you earlier was we don't, we have the substantial evidence test on the record taken as a whole to support the Board's decision. Isn't that the test? That's the test. But when the judge violates legal principles, doesn't follow a legal principle, PGP, vacation pay, including time as a casual, including time for injuries or illnesses, that's a legal error, and that has to be reversed. The other thing I want to emphasize that's really interesting is the first time we've had two trials on this case. The first trial, the judge said I can't go with this PMA average, it's deflated. Upon appeal, the Board said we agree with that. Second time, nobody urged him to go with the PMA average. The employer didn't, and we certainly didn't, but he goes with it, and the Board said that's okay the second time. But wasn't there, I sensed a frustration where he was sort of saying, but there's no other evidence on which to base a decision, so I'm stuck. He had plenty of evidence. We had several of the other longshoremen who came in with Lloyd Ryan who testified to work habits and consistency and work opportunity, and there was, there was. Did he find that evidence somewhat unreliable? He, you know, he, I'm not going to make any excuses for him, but he didn't follow that evidence. He had a right not to follow that evidence if he wanted, but he can't come up with something that's not legally based correctly. Your question, your problems are the legal, and I understand your argument. I'm going to let counsel respond. The only other, the other issue, the other thing is the PMA put on its form, don't use this for an individual. It's not predictive of what any individual is going to earn based on this. It's just an average overall for this period of time based on factors that don't apply to each individual. The other issue is this 17-month period of disability when we're claiming that Mr. Ryan, Mr. Ryan's claiming he should have received total disability and not partial. And there's, in the 20HA letter, I mentioned an LW case that the board recently decided exactly the opposite of how they decided this particular case. In that case, the worker, if the worker took outside employment when they should have been available for longshore work, they were subject to losing their registration. And it's the same thing in this case. Mr. Sundet testified, and he even quoted the section of the longshore contract, that if Mr. Ryan took a job as a parking lot attendant or a security guard off the waterfront, he was subject to being brought before the Joint Port Labor Relations Committee and given the choice to either work on the waterfront or you, or you give up your registration. And he mentioned that that had even applied to somebody else who took a post office job, and when he was confronted with that, he gave up the post office job and kept his registration. Thank you, counsel. Thank you. We'll hear from Steve Doring, Services. Thank you. If it pleases the Court, John Dudry for the employer and its insurer. I'd like to take 15 seconds on that threshold issue. I think the specific point is whether actually serving the petition for review on the director without naming the director of review gets the claimant over that threshold. I couldn't find any cases one way or the other, which is why we were asking. Well, if I understood Mr. Rabinowitz correctly, I have not had an opportunity to check our clerk records, clerk of court records. But as I understood it, he said apparently that our records will show that the agency has been added as a party. Is that correct or not? That's not quite correct. 15C requires the petitioner in an administrative review proceeding to serve copies of the petition on all the parties who appeared below and to give the clerk a record of the service and to provide enough copies to serve. That was done. It's just that the petition didn't name the director. The language that troubled me and prompted my question to opposing counsel was 15A2 says the petition must name the agency as a respondent. And did the petition name the agency? No, it did not. It was served. Is this jurisdictional? Can it be waived? It's the rule says shall. And our position is that the proceeding shall be commenced in a certain way. And there was a 60-day window from the board's decision to commence it. So the question is by serving but not naming, was that complied with? Certainly the provision that requires naming the agency as a respondent wasn't complied with. The director is on the docket because the director was served. And that's the issue. This is different from the typical administrative proceeding. It's not X versus the agency. It's X versus Y and the agency. So we raise that simply because it was clear the rule hadn't been complied with, and we found absolutely no law squarely on point on this. Very well. We'll have to take a look at it. I think most of us feel very jealous of our jurisdictional rules, and we try to police them very, very carefully, and we'll examine it. I think if you look at the papers that started this file, Your Honor, that's what I described as what you'll see. Very well. Thank you. Moving on to the average weekly wage issue, the fundamental objection that my client has to the claimant's arguments is that the only alternatives put before the ALJ were various classes of employees, the same or most similar class at the same time in the same area. Literally, the evidence that the judge accepted is within the terms of the statute. This is like the bookend to the Traxel case you just heard. Everybody here agrees 910C applies, and the goal there is to best approximate the claimant's wage earning capacity, not to reconstruct an ideal work year, which is the Woolley case that you've just been discussing. And the problem here is there is a way under the Act to use the wages of another person to establish an average weekly wage. That's 910B. If you have a worker such as Mr. Ryan who didn't work substantially the whole of the year, and we agree with Mr. Rabinowitz, the time as a casual where the earnings are much lower shouldn't be counted against him for trying to figure this out. If we were working out an individual average weekly wage under 10C, that wouldn't be included. What you do under 10B is you find a worker of the same or most similar class who did work substantially the whole of the year, and then you apply the 260 or 300-day multiplier. That wasn't done here, and at this point it's waived because it was never raised below. That's one of the holdings in Duncanson-Harrison. So you're left with the same or most similar class. The judge's first decision said he thought there were plenty of problems with the one he eventually used, but he felt it was the most reliable evidence in the record. The board said, yeah, that's fine. He acted within his discretion. So when it comes back for hearing, now we have three rival classes. My client had, and we protected our flank on this, used the group that included Mr. Ryan, said, well, okay, we've got a smaller group. They all started at the starting line at the same time. Let's compare what they earned from that point forward in 97 and through all of 98. The third group, the one that the claimant suggested, well, let's just take the highly motivated earners in the group of people who started at the starting line and use them, and that figure was even higher. Our client did protect its flank by saying the figure we're offering, this group of 14, the number that comes from that group should be, the average weekly wage should be no greater than that. And the judge gave his reasons, specific reasons for rejecting that. He felt the group was too small, and he felt it included too much of a period after the injury for earnings. And he rejected the group that the claimant offered, saying specifically as a finding of fact. And this is quoted at length at pages 17 and 18 of my client's brief, that he found it was unreasonable because he didn't feel that Mr. Ryan was as motivated or as skilled as some of the others in the group, and it excluded people who by all accounts should have been in. These were decisions he had to make. He was entitled to make. It seems to me you have a pure abuse of discretion situation here. If any one of the three, or at least certainly two of the three, could be the right decision. The rules Mr. Rabinowitz is talking about, again, this is why we disagree with the argument in toto, we are dealing with determining the same or most similar class. And that's a class. Again, we have literally a class within the meaning of the statute. If you start breaking it apart to every single individual in it and say, oh, this guy shouldn't be in there, that gal shouldn't be in there, we should only have the highly motivated people, you've abandoned the statutory concept. It really goes to a question, again, which of the three is most reasonable? And the judge said, I don't particularly like this 1997 average from PMA, but it's the best evidence I've got. He made specific findings of fact that aren't challenged here, rejecting the claimant's theory and the employer's alternative theory. So I think at this point, with A and B out of the question, and the three alternatives posed to the judge in his having given specific reasons for the one rather than the other, that's all she wrote. It is a question of fact, or it's purely abuse of discretion. Kennedy. Counsel, you may have an appealing argument with respect to the substantial evidence in the record. What about your response to Mr. Rabinowitz's suggestions, I think he made three or four, that there were significant legal errors made by the board in this case? Well, first of all, I think the overarching response is that it's probably impossible to construct a class that's going to accommodate those concerns with the kind of precision that you can in the case of an individual worker. The first, and again, the question was, well, we don't know how many all of these people worked. We know that some of them weren't B workers for the first two months of the year. But the class as a whole includes all 12 months, as the administrative law judge found. Mr. Rabinowitz argues that the judge had no basis for assuming vacation pay was included, and Sproul says you've got to take out the pay received before and put in the pay received afterward. I think in Mr. Sproul's case that made a difference of $2 to $3 in his compensation rate. The same answer. In fact, if you look at page 497 of the excerpts, the PMA average says it does include vacation pay and holiday pay for the year in question. So how much do you gain by trying to deconstruct a class and say, well, maybe this guy, we should take out the 1997 and put in the 1998, and, you know, two days later we might have something that's a dollar or two different. Mr. Rabinowitz's third point was about holiday pay, and I think that one's really interesting because his group was not eligible for the first four paid holidays. You'll see that at the very end of volume four of the excerpts. They get paid for New Year's Day, Martin Luther King's birthday, Lincoln's birthday, and President's Day. But if you're not registered, you don't get paid. So the figure he disagrees with includes pay that these folks didn't get. The, let's see, his fourth point, I don't think he emphasized, some workers might have been off ill. Well, again, as a class, I don't think the point carries. The, he mentioned the pay increase that occurred before the, before the injury. And, again, it all works out. It's a pay increase that occurs the middle of the year every year, and it's going to be reflected in this average, which also includes two months of 1987 when Mr. Ryan didn't work. So, again, it's hard to say that it deflates it. It's all going to balance out one way or another. Didn't, didn't you concede first go around that this figure that the board came out or the ALJ came out with was too low? No, not at all. The, the argument on appeal to the board the first time was the judge used a higher figure that had been proposed by Mr. Rabinowitz before the claim proceeded to hearing. My client's argument with the judge accepted was that that higher figure amounts to a stipulation that the claimant ought to be held to, and it's awfully favorable to the claimant because this PMA average, which he eventually used, is, is lower than that. The board threw out the, the figure that the judge based the award on originally and held that he could, he could come back, he could, he could take new evidence and he was to consider the, the average weekly wage. So it, it was not something that we rejected. We proposed it to show that we were prepared if the claimant was ready to stipulate or to, to, to continue to stipulate that the higher figure would be, would be okay. The claimant rejected it. The, the issue was wide open on appeal and on, on remand. And the higher figure was put in because the judge had been critical of the first average weekly wage. That, again, it was always the average weekly wage is no higher than this alternate figure. The, the original one was never not before him. And so I think there's certainly been no waiver of the issue. And, and the board discussed that in its 2004 decision, which is in the excerpts, and also in the 2005 order on reconsideration, which is in the excerpts. Those are both in volume one. No, I don't want to put words in your mouth, but so I'm going to let you respond. It seems to me that what you're really suggesting is that in making a 910C calculation, that there are individual rules which we would normally make in other situations in which we've held in other cases that we ought to make. But in a 910C calculation where it's an approximation anyway that those, should we say, rules are, are not appropriate? Is that what you're arguing? Well. I mean, my worry is this. And we, you, you're not the only case. We have class action cases where we have an abuse of discretion in the district judge's part. If he makes an error of law, however, in making his class certification or not making the class certification, we say automatically an abuse of discretion and we turn it back. Well, here we are with, with areas where, I mean, to be fair in my, in my review, I found some could be errors of law here. And, and we're, but we're making really a best approximate on a 910C of what we're supposed to do here. And it seems to me your argument is those are really not errors of law in making a 910C calculation. Is that what you're telling me? I think when you're talking, Your Honor, about a class of employees, it's probably impossible to do some of the, the things that Mr. Rabinowitz is complaining about. And some of the others are contemplated in the figure, in the way I described when I answered Judge O'Scanlan's question. The, the goal is to arrive at a sum that reasonably represents a claimant's annual earning capacity at the time of injury. And as you had said earlier, it's particularly on the, the, these are strange facts. Mr. Ryan was off nearly half the year because of another injury with another employer. And for the first three months of the year, actually first four months of the year, he wasn't deregistered. He had far fewer work opportunities than he did. So his own earnings are a very, very minimal sample. And, and nobody argued that they should be used. So when you get to a class, again, you're, you're talking about approximations. And, and Mr. Rabinowitz has not suggested that it's even feasible to do this on a class basis without, without rejecting the whole concept of the class and going through individual by individual and deciding who's in and who's out. And the ALJ specifically rejected that. If there were. Counsel, Judge White has a question. Would you just comment briefly on the alternative employment issue? Yes, I will. In a sentence, short sentence, the, the, the rule, the judge found initially that the union's action was arbitrary and unreasonable. And he based that on a finding, or that finding was based on testimony that the rule that kept Mr. Ryan off work was not the employer's rule, it was the union's rule. That finding was never set aside. The conclusion he drew from it was rejected. And they sent it back to consider this issue of the, the 15 months of disability. The judge said this was the law of the case. The board rejected the argument that the employer is responsible for this. And I think the simple answer, the simplest answer in that procedural setting, is based on the finding, the union wasn't letting Mr. Ryan work. There was no testimony that they required him to show up, given the reason that they wouldn't let him work. You don't have a full medical release. Under those circumstances, the judge was within his, certainly within his discretion to use the labor market survey for the general labor market to say this is what Mr. Ryan's wage earning capacity was. That produced a more substantial permanent partial award than he would have produced if he had found that Mr. Ryan could have worked because the union's position was unreasonable. So he, that favored him in, in terms of the choice that the board remanded to give him. If that answers the Court's question, I'm. Thank you, counsel. Thank you. Mr. Rabinowitz. Thank you. Mr. Renders, I, I should say that I'm very troubled by this jurisdictional issue. You heard what Mr. Dudley had to say. I gather you never moved to amend your notice of appeal or, or, or any, or, or seek to. No, here's, here's what happened. I went back and checked this a little bit more thoroughly. The, I did mention, I did name the director in the representative statement as a party to the case. And apparently the court then included him in the caption. I moved to amend the caption. I don't have the exact date, but I can provide that to the court in a letter. And the court then ruled that the issue was moved because the director was already included in the caption. Well, the statute says, or Rule 15, which is statutory, the petition must name the agency as a respondent. Did the petition name the agency as a respondent? I did not name the agency when I, in the caption of the actual petition. In the petition itself, okay. In the petition itself. I did name the agency in the, in the, in the statement of representation that was attached to this. And then I did file a motion to amend the caption subsequently. And the court ruled that the issue was moved because the director was already included in the caption. Now, you say the court ruled. Now, is there a, is there an order of this court that. Yes, there is an order. And I was looking for it in the file and I couldn't find it with all the papers. But I'd be glad to provide that. Sometimes what happens when the case comes before the panel to which the case is assigned, some of the prior motions panel or other preliminary orders don't track. Right. So we'll have to look as well. But you're satisfied that there is such an order which specifically holds that the, this jurisdictional issue is moved? That's correct. The, I filed a motion to amend and the court ruled that it was moved. And therefore, I think they said therefore denied because the director was already included in the caption. All right. Very well. Thank you, counsel. And I'd be glad to. Go ahead. Go ahead with your argument. The, the issue on this, I would like to address Judge White's question a little bit more completely. The issue is, there's no question that the, that Mr. Rhine was prevented from working by the joint hiring hall. And that issue was, and the board held that it was the, it was a joint employer union effort. And that, and that issue was never cross appealed by the employer in this case. So I don't think that issue was before the court. The, and I think this LW case that I mentioned in the 20HA letter, I think resolves this issue in favor of Mr. Rhine. And what I'm suggesting to the court is they remand to the administrative law judge to resolve this issue in light of the LW case. The other issue, I think I made this pretty clear, I think, is that these, this involves legal mistakes that were made. That were not, there were vacation pay, for example, was not included. They included casual earnings. This, this, we know for 14 of the workers, this was not a way to do it. It did violate well established legal principles. And for the other 49, you know, they all could be in that same category, none of them could be. And that, just that, that's not the way to do an average weekly wage when it's going to affect a worker for the rest of his career. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.